UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DOREEN A. KOCH, as the Administratrix of
the Estate of CURTIS GEORGE MAINS, JR.,

        Plaintiff,

        -against-

MCCONNELL TRANSPORT LIMITED and
SNOKIST, LTD.,

        Defendants.
------------------------------------------------------------X

MEMORANDUM AND ORDER

CV 13-3016

(Wexler, J.)

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★  MAY 29 2015  ★

LONG ISLAND OFFICE

APPEARANCES:

LURIE, ILCHERT, MacDONNELL & RYAN, LLP
By: William Ryan, Esq.
475 Park Avenue South
New York, NY 10016
Attorneys for Plaintiff

WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
By: Beata Shapiro, Esq.
1010 Washington Boulevard
Stamford, CT 06901
Attorney for Defendant McConnell Transport Limited

GIBSON, McASKILL & CROSBY LLP
By: Robert Scott, Esq.
69 Delaware Avenue, Suite 900
Buffalo, NY 14202
Attorney for Defendant Snokist, Ltd.

WEXLER, District Judge:

        Plaintiff Doreen A. Koch ("Plaintiff" or "Koch"), as the Administratrix of

the Estate of Curtis George Mains, Jr. ("Decedent" or "Mains") brings this action against

Defendants McConnell Transport Limited ("McConnell") and Snokist, Ltd. ("Snokist")

-1-

(collectively, "Defendants"), claiming their negligence caused the injury and death of Decedent Mains. Defendant McConnell moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. Proc."). For the reasons stated below, the Court finds that issues of fact preclude granting summary judgment.

BACKGROUND

As reflected in the parties' Local 56.1 Statements and the other documents submitted in connection with the motion, the following facts are undisputed: On December 10, 2012, an empty trailer owned by Defendant McConnell, a trucking company, was delivered to Defendant Snokist, a seller of Christmas trees. At Snokist, the McConnell trailer was loaded with Christmas trees to be delivered to Home Depot in Commack, New York for sale. Once the trailer was loaded and sealed, McConnell picked up the trailer and drove it to the Home Depot location in Commack. Snokist arranged for the trees to be unloaded at the Home Depot location by a third-party vendor, ICS. ICS did not arrive at Home Depot on time, so Home Depot management directed its employees to unload the Snokist trees from the McConnell trailer. Decedent was one of the Home Depot employees directed to unload the trailer. There was visible snow and ice on the trees and the interior floor of the McConnell trailer all the way to the opening of the trailer's doors. Decedent climbed into the trailer and began to unload the Christmas trees. He fell while pulling a tree out of the trailer, hit his head on the pavement, and died of his injuries within 24 hours.

In addition to what is undisputed, there are various facts that are disputed. Most importantly, there is a dispute concerning the involvement of McConnell's driver in the unloading of the trees once they arrived at Home Depot. The most extensive testimony on this

issue was from Chris McGee, a Home Depot employee, who testified that he "definitely saw [the driver of the truck] on several occasions throughout the time, but did not know if he was there" when McGee arrived on the scene. See Snokist Response to Defendant McConnell's Statement of Material Facts ("Snokist Res."), Ex. E: Deposition of Chris McGee ("McGee Dep."), at 19-20. He testified that he did "remember seeing [the driver] getting out of the cab on at least one occasion and then going back and forth between the cab of the truck and the rear of the truck. I remember that he did try to dislodge some trees from the truck and wasn't able to pull any out." McGee Dep., at 20. He further stated the "[t]he driver attempted to climb up and dislodge trees from the truck and was not able to do so and Home Depot associates attempted to pull trees out from ground level and were not able to do so." McGee Dep., at 21.

In terms of chronology of who first tried to dislodge the trees, McGee stated "I think the driver made the first attempt from near the top to climb up and dislodge some." McGee Dep., at 22. "I believe the driver climbed up onto the rear of the truck which had very little purchase (sic). It was not a good place to put your feet up there and try to pull a three (sic) from near the top." McGee Dep. at 22. "Actually, I first think he tried to pull some out of the bottom to try and trigger a small tree avalanche to get the rear of the truck clear. And in failing that, he tried to get some from the top as well." McGee Dep., at 22-23.

Regarding what, if anything, the driver said and to whom, McGee testified that he "heard him speaking, but I did not address him directly," and that he "was just speaking to the area at large, minor comments regarding difficulty of getting the trees out." McGee Dep. At 26-27. He stated, "I couldn't say [the driver] stepped in [to the trailer] because there was physically no room for anyone to step in, but he did attempt to pull some trees, yes. And no, he was not successful."

McGee Dep., at 30.

As to the general process typically used to unload Christmas trees, McGee testified that it was "done by hand," and "[t]he driver and his help would enter the trailer and throw the tress (sic) down." When asked if the driver always helped out, McGee stated that "[o]n the few occasions that I unloaded Christmas trees, yes, I think so." McGee Dep., at 29-30.

To refute the McGee's testimony that the McConnell driver was involved in the unloading of the trees, McConnell points to the less extensive testimony of other witnesses. Lori Springer, a safety manager with McConnell, testified that the McConnell driver would have no responsibility for the loading and unloading of trees. See Defendant McConnell Transport Limited's Notice of Motion for Summary Judgment ("McConnell's Motion"), Exhibit (Ex."), C: Deposition of Lori Springer ("Springer Dep."), at 50. Another Home Depot employee, Kenneth Sambuco testified that he was "sure [the driver] was around. I don't remember him specifically." See McConnell's Reply to Snokist Opposition ("Reply to Snokist"), Ex. 3: Deposition of Kenneth Sambuco, at 75. Another Home Depot employee testified that he did not recall if he ever saw the driver. Reply to Snokist, Ex. 4: Deposition of Donato Gonzalez, at 55. Another, Mauricio Ramos testified that he first saw the driver in the truck and didn't remember if he ever saw him exit the truck. Reply of Snokist, Ex. 5: Deposition of Mauricio Ramos, at 54. Finally, Robert Parente testified that he did not see, speak to or identify the driver. Reply of Snokist, Ex. 6: Deposition of Robert Parente, at 100.

Other disputed issues include whether the McConnell driver was present when the trees were loaded onto the truck by Snokist, and whether the driver, or someone else, broke the seal on the back of the truck to start the unloading process.

## DISCUSSION

I.  Legal Principles

   1.  Standards on Motion for Summary Judgment

The standards for summary judgment are well settled. Rule 56(a) of the Fed. R. Civ. Proc. states that summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); Mihalik v. Credit Agricole Cheuvreux North America, Inc., 2013 WL 1776643 (2d Cir. 2013). The moving party bears the burden of showing entitlement to summary judgment. See Huminski v. Corsones, 396 F.3d 53, 69 (2d Cir. 2005). In the context of a Rule 56 motion, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004).

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts .... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002), quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). As the Supreme Court has stated, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. R.G. Group, Inc. v.

Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984), quoting SEC v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir.1978). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996), quoting Research Automation Corp., 585 F.2d at 33.

II.  The Present Motion

    A.  Duty Owed to Plaintiff's Decedent

Defendant McConnell moves for summary judgment, arguing it cannot be liable for negligence since it did not owe the Decedent a duty of care. McConnell urges that its relationship was with Snokist, with whom it had contracted for the transport of the Christmas trees, and since it did not have a relationship with Plaintiff's Decdent, there was no duty of care owed, and therefore no breach.

It is well-settled that under New York law, a claimant seeking to establish a prima facie case of negligence must demonstrate that "(1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damaged as a proximate result." Williams v. Utica Coll. of Syracuse Univ., 453 F.3d 112, 116 (2d Cir. 2006) (citations omitted). An existence of a duty of care is usually a question of law for the court. Palka v. Servicemaster Mgmt. Serv. Corp., 83 N.Y.2d 579, 585, 611 N.Y.S.2d 817, 634 N.E.2d 189 (1994). It is for the fact-finder to determine whether the duty was breached and, if so, whether the breach was the proximate cause of plaintiff's injury. Id.

"[A] a duty of reasonable care owed by a tortfeasor to an injured party is elemental to any recovery in negligence." Palka v. Servicemaster Management Services Corp., 83 N.Y.2d 579,

584, 611 N.Y.S.2d 817, 634 N.E.2d 189 (1994). As recognized by the Second Circuit, "[t]he existence of a duty is thus a *sine qua non* of a negligence claim: 'In the absence of a duty, as a matter of law, no liability can ensue.'" Alfaro v. Wal–Mart Stores, Inc., 210 F.3d 111, 114 (2d Cir. 2000) (quoting McCarthy v. Olin Corp., 119 F.3d 148, 156 (2d Cir.1997)).

The fundamental question here is whether McConnell owed Decedent a duty of care. It is undisputed that McConnell had a contract with Snokist to transport Snokist's Christmas trees from Canada to the Home Depot in Commack, New York. It is also undisputed that a third-party vendor was expected to unload the trees. It is also undisputed that that vendor did not show up as scheduled, and that the Home Depot employees were directed to unload the trees. The question is whether the McConnell driver became so involved in the unloading of the trees as to create duty of care to the Decedent. The current record is insufficient to answer that question.

In the Palka case, the New York Court of Appeals stated that a duty of care arises "'whenever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that if he [or she] did not use ordinary care and skill in his [or her] own conduct with regard to the circumstances he [or she] would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger.'" Id., at 585 (citations omitted). "Thus, we have come to recognize that while the existence of a duty involves scrutiny of the wrongfulness of a defendant's action or inaction, it correspondingly necessitates an examination of an injured person's reasonable expectation of the care owed and the basis for the expectation and the legal

imposition of a duty." Id., at 585 (citations omitted).[1] The Palka Court found that the defendant maintenance service contractor had contracted to inspect, repair and manage the property, and that this duty extended to the plaintiff employee at the property, who was reasonably within the zone of the contemplated services. Id., at 589.

A duty of care may also arise where "one who assumes to act, even though not obligated to do so, may thereby become subject to the duty to act carefully" where the action is "taken is for the benefit of another and not in furtherance of the interest of the one who assumes to act." Jansen v Fidelity & Cas. Co. of N.Y., 79 N.Y.2d 867, 581 N.Y.S.2d 156 (1992) (citing Matter of James v State of New York, 90 A.D.2d 342, 344, 457 N.Y.S.2d 148 (4th Dept. 1982), *affd*, 60 NY2d 737, 469 N.Y.S.2d 695 (1983)).

The case argued by the Defendant is not instructive. In Huertas v United Parcel Serv., Inc., 42 Misc.3d 245, 251-252, 974 N.Y.S.2d 758 NY (2013), the plaintiff, a store employee, tripped and fell over delivered boxes. The court ruled that UPS did not have a duty to stack the delivered boxes behind the counter, and indeed noted that it was the obligation of plaintiff and

---

[1] Under New York law, a plaintiff may recover from a defendant for failure to exercise due care in defendant's performance under the contract under three circumstances: (1) "where the promisor, while engaged affirmatively in discharging a contractual obligation, creates an unreasonable risk of harm to others, or increases that risk"; (2) "where the plaintiff has suffered injury as a result of reasonable reliance upon the defendant's continuing performance of a contractual obligation"; and (3) "where the contracting party has entirely displaced the other party's duty to maintain the premises safely." Church ex rel. Smith v. Callanan Industries, Inc., 99 N.Y.2d 104, 111-112, 782 N.E.2d 50 (2002) (citing Espinal v. Melville Snow Contrs., 98 N.Y.2d 136, 139–141, 746 N.Y.S.2d 120, 773 N.E.2d 485 (2002) (other citations omitted). Defendant Snokist argues that Defendant McConnell's duty stems not from its performance under a contract, but rather was created by becoming involved in the unloading of the trees, and voluntarily assuming the duty. See Snokist's Memorandum in Opposition ("Snokist's Mem. In Opp."), at 5-9.

other store employees to ensure the boxes did not create a hazard. Furthermore, the large boxes might have created an open and obvious hazard that plaintiff should have avoided. That is distinguishable from this case, where there is a question of whether McConnell's driver participation in the unloading of the trees created a duty to the Decedent.

In this case, the Court notes that the only significant testimony on that issue is from Mr. McGee, a Home Depot employee who gave fairly detailed testimony regarding the driver's attempts to unload the tree. Yet, McGee's testimony does not fully address, *inter alia,* whether the driver initiated the unloading effort, whether he directed people on how to unload the trees, whether he ever engaged directly with the decedent, or instructed or assisted him in the unloading of the trees. In an attempt to contradict McGee's testimony, Defendant cites to vague testimony of witness who saw, or didn't see, the driver in the unloading effort.

While the Court recognizes that the question of whether a duty exists is a question of law, the factual record currently before it is insufficient to make that determination. Further testimony is needed regarding Defendant's driver involvement in the unloading to determine if a duty of due care was created, with a reasonable expectation in Plaintiff's Decedent of due care by the driver.[2] On a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of that party. Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004).

Having reviewed and considered the parties' submissions, and drawing all inferences in favor of the Plaintiff, the Court finds that Plaintiff has created a sufficient issue concerning

---

[2]Plaintiff also argues that McConnell is vicariously liable as the owner of the trailer by operation of the New York Vehicle Law, and had an independent duty to control Snokist, who was using and operating its trailer. See Plaintiff's Memorandum of Law ("Pl. Mem."), at 11-19.

whether McConnell's involvement in the unloading of the trees created a duty. See Raney v. Seldon Stokoe & Sons, Inc., 42 A.D.3d 617, 619, 839 N.Y.S.2d 577 (3d Dept. 2007) (summary judgment properly denied where there was issue of fact concerning whether defendant's participation in loading bales of hay created a duty to plaintiff). Therefore, the Court denies Defendant's motion for summary judgment at this juncture, without prejudice for Defendant McConnell to renew that motion at trial once additional evidence on this issue has been adduced.[3]

### B. Preemption by the Carmack Amendment

Defendant McConnell also argues that Plaintiff's claims against it are preempted by the Carmack Amendment ("Carmack" or "Amendment"), and therefore must be dismissed. The Carmack Amendment, 49 U.S.C. § 14706(a)(1), limits liability owed to a person entitled to recover under a receipt or bill of lading to the "the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States." It provides the exclusive remedy "whereby a shipper may seek reimbursement from a carrier for damage to his or her property that occurred during shipment." Guru Kripa Foods, Inc. v. Inter, Inc., 2012 WL 3306520, *10 (E.D.N.Y. August 10, 2012) (citing Commercial Union Ins. Co. v. Forward Air, Inc., 50 F.Supp.2d 255, 257

---

[3]Defendant McConnell also argues that even if there was a duty owed to Plaintiff, the snow and ice was an "open and obvious" hazard that precludes liability. Yet, while there is consistent testimony that there was snow and ice present on the trees, there are issues of fact for the jury to decide concerning the extent of that condition, and whether it did indeed constitute "open and obvious" hazard. See Cardinal v. Long Island Power Authority, 309 F.Supp.2d 376, 389 (E.D.N.Y. 2004) (in the absence of clear and undisputed evidence otherwise, whether a condition is "open and obvious" is reserved for a jury).

(S.D.N.Y.1999) and Cleveland v. Beltman North American Co., Inc., 30 F.3d 373, 380-381 (2d Cir. 1994) (a shippers's claim for compensation for loss or injury to property is preempted by the Carmack Amendment). Carmack preempts a shipper's state and common law claims for breach of contract and negligence for goods lost or damaged when shipped through interstate commerce. Materazzi v. Atlas Van Lines, Inc., 180 F.Supp.2d 408, 410 (E.D.N.Y. 2001) (citations omitted); see also York v. Day Transfer Co., 525 F.Supp.2d 289, 296 (D.R.I. 2007) (citing Hall v. N. Am. Van Lines, Inc., 476 F.3d 683, 687–89 (9th Cir. 2007); Hoskins v. Bekins Van Lines, 343 F.3d 769, 778 (5th Cir. 2003); cf. Rini v. United Van Lines, Inc., 104 F.3d 502, 507 (1st Cir. 1997)).

Yet, various courts have recognized that claims "separate and distinct from the delivery, loss of, or damage to goods" escape preemption. See York, 525 F.Supp.2d at 298 (citing Schwarz v. Nat'l Van Lines, Inc., 2004 WL 1166632 at *4 (N.D.Ill. May 21, 2004); Rini, 104 F.3d at 506 ("liability arising from separate harms-apart from the loss or damage of goods-is not preempted"); Smith v. United Parcel Service, 296 F.3d 1244, 1248–49 (11th Cir. 2002) ("only claims based on conduct separate and distinct from the delivery, loss of, or damage to goods escape preemption"); Gordon v. United Van Lines, Inc., 130 F.3d 282, 289 (7th Cir. 1997) ("the Carmack Amendment does not preempt those state law claims that allege liability on a ground that is separate and distinct from the loss of, or the damage to, the goods that were shipped in interstate commerce"); Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 383 (5th Cir. 1998) (Carmack Amendment preempts any remedy beyond "the actual loss or injury to the property," unless the shipper alleges injuries "separate and apart from those directly resulting from the loss of shipped property")).

The Court finds that the claims here are "separate and distinct" from the delivery, loss or

damage to good, and thus escape preemption. Here, Plaintiff claims Defendants' negligently caused Decedent's death through the packing and unloading of the Christmas trees. This is not a claim that goods were damaged, or lost during transport. Defendant McConnell argues that "damaged goods" – namely, the trees covered in snow and ice – caused Decedent's injuries, therefore preempting Plaintiff's claims. In support, it cites cases where claims by the shipper for personal injuries stemming from damaged goods were preempted. See York v. Day Transfer Co., 525 F.Supp.2d 289, 301 (D.R.I. 2007) (plaintiff/ shipper's claims stemmed from goods that developed mold while being transported, and once delivered, "befouled the living areas" and required remediation. The Court found the claims were preempted by the Carmack Amendment since "None of the facts alleged by Plaintiffs give rise to conduct or harm sufficiently separate and distinct from the shipment and claims process as to warrant exemption from the preemptive reach of the Carmack Amendment."); Glass v. Crimmins Transfer Co., 299 F.Supp.2d 878, 887 (C.D.Ill. 2004) (claims for emotional distress and personal injury brought by the shippers of their goods were preempted where "claims arise directly from and are based solely upon loss of and/or damage to the property that the Glasses consigned to the defendants for shipment"); but see Kavulak v. Laimis Juodzevicius, A.V. Inc., 994 F.Supp.2d 337, 343-344 (W.D.N.Y. 2014) (plaintiff is not entitled to bring claims under the Carmack Amendment, which seeks to hold carriers liable for damages to transported goods, for his personal injuries suffered when struck by a carrier transporting yogurt cups are not covered by the Carmack Amendment).

The Court is not persuaded by McConnell's argument. First, it is important to note that neither Plaintiff nor the Decedent was the shipper of goods that had a receipt or bill of lading with Defendant McConnell. Second, the gravaman of this negligence claim is that the

Defendants were negligent in the packing and unloading of the trees, which caused Decedent's death. McConnell's argument that the trees were "damaged" by the snow and ice, and caused Decedent's death, while creative, is not persuasive on the record currently before the Court. The Court finds that Plaintiff's claims here are "separate and distinct" from a claim against a shipper for damaged or lost goods. Furthermore, to the extent Defendant McConnell's theory relies on whether the "damaged" trees caused Decedent's death, that is a question of fact to be determined by the jury.

## CONCLUSION

For the foregoing reasons, Defendant McConnell's motion for summary judgment is denied.[4] Counsel are reminded that jury selection for the trial of this matter is scheduled for June 8, 2015 at 9:30 a.m.

SO ORDERED.

s/ Leonard D. Wexler
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
May 29, 2015

---

[4] Accordingly, Plaintiff's motion in limine to strike certain paragraphs from Defendant McConnell's statement of undisputed facts as unsupported by evidence and conclusory statements of contested law, is denied as moot.